IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:20-cv-01558-CNS-NRN

ROBERT R. and JULIE R., as Parents and Guardians of Dylan, a disabled adult,

    Plaintiffs,

v.

JEFFERSON COUNTY SCHOOL DISTRICT R-1,

    Defendant.

## ORDER

Before the Court is Defendant's Motion for Summary Judgment. (ECF No. 67). The Court GRANTS IN PART AND DENIES IN PART the motion for the following reasons.

### I. FACTS

This civil action arises from the alleged sexual assault of Dylan, then a minor, by K.G., a fellow minor classmate, in a Jefferson County public school. On August 19, 2020, Plaintiffs filed their Amended Complaint alleging: (1) violation of Title IX, 20 U.S.C. § 1681, *et seq*.; (2) state-created danger, in violation of 42 U.S.C. § 1983; (3) failure to train, in violation of 42 U.S.C. § 1983; and (4) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Americans with Disabilities Act (ADA), 42 U.S.C. § 12102, *et seq*., on behalf of Dylan and (5) violation of parental rights under Section 504. (ECF No. 24). On September 9, 2020, Defendant answered, raising affirmative defenses of (1) failure to minimize or mitigate damages; (2) damages not to the

extent and nature as alleged; and (3) non-derivative damages sought by Plaintiffs being barred. (ECF No. 29, p. 15).

In the instant motion, Defendant moves for summary judgment arguing that there is no genuine dispute of material facts that (1) Dylan was not discriminated against in violation of Title IX; (2) Defendant did not affirmatively act to endanger Dylan; (3) Dylan's due process rights were not violated; (4) Defendant did not engage in disability discrimination under Section 504 and the ADA; and (5) Robert and Julie lack standing under Section 504.  (ECF No. 67).

## II.  LEGAL STANDARD

Summary judgment is warranted when (1) the movant shows that there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party.  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).  The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986).  Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  "[Q]uestions of intent, which involve intangible factors including witness creditability, are matters for consideration of the fact finder after a full trial." *Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980).

### III.  UNDISPUTED FACTS

Dylan and K.G. are people with disabilities, both physical and intellectual.  Both Dylan and K.G. received special education services at Bear Creek High School within its Significant Support Needs (SSN) classroom.  Cindy Dominguez and Brian Grudowski were special education teachers who taught and supervised Dylan and K.G.  Dominguez was also Dylan's case manager, who oversaw, among other things, his Individualized Education Programs (IEPs).

On October 12, 2016, K.G. yelled to Dylan and another classmate, "I hate you [J.M.], I hate you, Dylan, I'm going to hurt you, Dylan."  (ECF No. 76-1, pp. 11-12).  That same day at lunch, when Dylan and J.M. did not want to sit with K.G. she yelled "I hate you, Dylan," "I am going to kill you," "I am going to hurt you, [J.M.]."  K.G. charged at Dylan, hands out, and yelled, "I will kill you, Dylan, get over here so I can kill, you."  (*Id.*, pp. 13-14; ECF No. 67, p. 6).  School Psychologist Lisa Pontine and Principal Lynn Torr stepped in front of K.G. to physically shield Dylan.  (ECF No. 67, p. 6).  Later in October 2016, Dylan and K.G. went missing from a drama class together and were found in the school theater.  Defendant admits that K.G. was discovered lying on top of Dylan and kissing him.  (ECF No. 29, pp. 6-7).

In November 2016, K.G. again had an outburst in gym class and yelled "I hate you" at Dylan and J.M.  A teacher removed K.G. from the gym.  In February 2017, K.G. yelled at Dylan "I hate you, Dylan," and "I'm going to stab you, Dylan."  (ECF No. 76-1, p. 17; ECF No. 67, pp. 7-8).  On March 1, 2017, a teacher confiscated a note from K.G. which said "I'm going to hurt you, I'm going to stab (blank) and Dylan . . . I am going to kill myself."  K.G. was escorted to see Pontine, the school psychologist.  (ECF No. 76-1, p. 163).  That same day, during a math test, Grudowski confiscated a pair of scissors from K.G. because she was staring at the blades "in an almost trance

3

like state" and not focusing on the test. (ECF No. 68-2, p. 20). On March 1, 2017, Grudowski reported the scissor incident to Elizabeth Cole, Assistant Principal. (ECF No. 68-2, p. 21).

During this time, K.G. also wrote several notes to Dylan regarding her feelings, having sex, and having children. Some of these notes were found by Dylan's parents. (ECF No. 67, p. 9; *see* ECF No. 68, pp. 1-5). On May 2, 2017, Assistant Principal Cole emailed Robyn Klein, the school social worker, to have a conversation with K.G. and stop her from sending unsolicited notes and comments to Dylan. (ECF No. 68-2, p. 22). On May 2, 2017, Klein emailed Grudowski and Assistant Principal Cole stating: "I pulled Dylan aside today and told him he is not to engage in this sort of behavior and that if [K.G.] is trying to get him to, he is to say that it is not appropriate for him to talk about at school and go sit somewhere else not around her." (*Id.*, p. 23).

On May 10, 2017, Dylan's mother emailed Klein, Pontine, Dominguez, Grudowski, and Assistant Principal Cole: "We are furious that this continues to be an ongoing thing with this girl . . . We can't just ignore this behavior and have this go on for the rest of high school. What are the next steps here?" (ECF No. 68, p. 34). On December 14, 2018, Grudowski emailed Katie Cooper, a District Board Certified Behavior Analyst, noting that "[K.G.] is in a tailspin with her behaviors." (ECF No. 76, p. 46; ECF No. 68-3, pp. 23-24). On December 17, 2018, Erin Reiner, an art teacher, reported to Assistant Principal October Minnotte that on December 13, 2018, a classmate had witnessed K.G. watching videos in class regarding, among other things, how to perform fellatio. (ECF No. 76, p. 45; ECF No. 76-1, p. 178).

On December 18, 2018, at approximately 11:57 a.m., Dylan and K.G. left the cafeteria and arrived in front of a boy's bathroom. At approximately 12:02 p.m., Dylan entered the bathroom, soon followed by K.G. At approximately 12:14 p.m., school security officer Mark Bridges found

4

K.G. and Dylan in a bathroom stall after being alerted to the situation by two other students. (ECF No. 69). Dylan climbed out from underneath the stall and was instructed to go back to his class. Bridges watched him return to his class. Bridges then saw K.G. exit the stall and sent her back to her class. (ECF No. 68, p. 27; ECF No. 68-3, pp. 272-73).

A student reported to Reiner that she overheard K.G. discussing the alleged sexual assault. Reiner then reported this information to Dominguez and Grudowski. (ECF No. 67 p. 16; ECF No. 68-3, pp. 21-22). Assistant Principal Minnotte interviewed K.G. on December 18, 2018, who admitted that she had sexual contact with Dylan. (ECF No. 68-3, p. 159). Minnotte also interviewed the two students who had initially overheard the encounter in the bathroom. (*Id.*). The same day, Minnotte reported the incident to Robert R., Dylan's father, and provided a summary of the preliminary investigation. (ECF No. 68, p. 96). On December 19, 2018, Assistant Principal Minnotte informed Dylan's parents that she had opened a Title IX investigation into the incident and referred the issue to the police to conduct an investigation. (ECF No. 68, p. 6). The District closed the Title IX investigation on or about March 22, 2019. (ECF No. 76, p. 8).

## IV. ANALYSIS

Having reviewed the Amended Complaint, the motion for summary judgment, the related briefing, and the relevant legal authority, the Court finds that there are disputed questions of material fact that preclude summary judgment on some of the claims.

### 1. Violation of Title IX

A recipient "of federal funds may be liable under Title IX for its own conduct in being deliberately indifferent to student-on-student harassment." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008). A school district is liable under Title IX if

it "(1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school." *Id.*; *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Specifically, Defendant argues that (1) no appropriate person knew about K.G.'s notes or "angry yelling"; (2) none of these instances constitute harassment under Title IX; (3) staff were not deliberately indifferent; and (4) Dylan suffered no loss of educational opportunity.

"To be severe, pervasive, and objectively offensive, the behavior must be serious enough to have a 'systemic effect' of denying equal access to an education." *BPS v. Bd. of Trustees for Colorado Sch. for the Deaf & Blind*, No. 12-CV-02664-RM-KLM, 2015 WL 5444311, at *13 (D. Colo. Sept. 16, 2015). A single, serious sexual assault can satisfy the severe, pervasive, and offensive standard. *Doe 1 v. Howard Univ.*, 396 F. Supp. 3d 126, 136 n.2 (D.D.C. 2019); *see also T.Z. v. City of New York*, 634 F. Supp. 2d 263, 270 (E.D.N.Y. 2009). Furthermore, a single instance of severe, sexual abuse of a plaintiff plus a defendant's failure to take action other than to document the incidents can be viewed by a reasonable jury as creating a severe and pervasive environment that is objectively offensive. *BPS*, 2015 WL 5444311, at *13 (citing *Simpson v. University of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007)).

Defendant's argument that no appropriate person (i.e., only the principal, assistant principals, or deans of students) knew about K.G.'s actions is unavailing. An appropriate person is one "who at a minimum has authority to address the alleged discrimination[,] to institute corrective measures on the recipient's behalf[,]" and has actual knowledge. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). First, Defendant's argument raises the question as to why these occurrences were not reported to an appropriate person, in particular when K.G. was

6

watching sexually explicit videos in class.  Second, the record and undisputed facts make clear that an assistant principal was aware, at a minimum, that K.G. had made threats, both written and verbal, to stab Dylan and had scissors confiscated on the same day of the threats.  The undisputed facts also show that an assistant principal was also aware of multiple instances where K.G. harassed, acted inappropriately toward Dylan, or sent notes with sexual overtones.  After the alleged sexual assault in December 2018, Dylan was immediately removed by his parents from Bear Creek High School, and in January 2019, was transferred to Lakewood High School away from his established educational programs.  *T.Z.*, 634 F. Supp. at 273 (noting that relatively moderate ill effects following sexual harassment events were sufficient to establish an issue of fact under Title IX).  Finally, Defendant's accusation that Dylan's parents prevented the District from finalizing its Title IX investigation is belied by the record.  (ECF No. 76, pp. 8-13).  Accordingly, the Court finds that there are material facts in dispute, and Defendant is not entitled to summary judgment on this claim.

**2. State-Created Danger and Failure to Train, 42 U.S.C. § 1983**

Defendant argues that it is entitled to summary judgment because the District did not endanger Dylan or fail to train staff, in violation of the Fourteenth Amendment.  Plaintiffs alleged in the Amended Complaint that the District, by and through its administrators, teachers, and employees (1) had actual knowledge of K.G.'s harassment of Dylan but failed to take action to protect him, (2) affirmatively placed Dylan with K.G. despite Dylan's disabilities and K.G.'s continued harassment, and (3) consciously disregarded the risk to Dylan by ignoring the harassment.  (ECF No 24, p. 31-33).  Additionally, Plaintiffs allege that the District and Principal Lynn Torr failed to train teachers and employees on how to respond to sexual harassment in an

7

SSN classroom setting and failed to conduct training when the issue of harassment was raised. (*Id.* p. 34).

The danger creation doctrine is a narrow exception to the general rule of nonliability, creating a substantive due process claim. *Novosad v. ACB*, No. 05-CV-01651-MSK-BNB, 2006 WL 1409441, at *3 (D. Colo. May 17, 2006). A state official may be liable for the private violence of third parties if that official created the danger through intentional or reckless, affirmative conduct that caused the harm and with "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1238 (10th Cir. 1999); *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006). Plaintiffs needed to establish that: "(1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscience." *Ruiz v. McDonnell*, 299 F.3d 1173, 1182–83 (10th Cir. 2002). Affirmative conduct for a § 1983 claim should "typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration" and not a "threat of an indefinite range and duration." *Id.* at 1183. The application of this doctrine is "reserved for exceptional circumstances" as "ordinary negligence does not shock the conscience." *Id.* at 1184 (citations omitted).

First, Plaintiffs have not argued that there was any affirmative action. In this case, the harassment was not an immediate threat of harm, but rather one of a longer range and duration,

beginning in Dylan's freshman year of high school and concluding with the alleged sexual assault in his junior year. Second, Plaintiffs have not raised a genuine dispute of material fact that the conduct by the District or its employees rose above the general level of negligence in order to sustain a claim under § 1983. *See Sutton*, 173 F.3d at 1238 ("[An] act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk."). Finally, permitting unreasonable risks to continue is not necessarily conscience-shocking behavior. *Id*.

While the incidents during Dylan's time at Bear Creek High School are truly unfortunate, the danger creation doctrine is interpreted so narrowly that Plaintiffs have not raised a genuine dispute of material facts to support an argument that the District's conduct rose to the level of a constitutional tort or that the outrageousness and magnitude of potential or actual harm was truly conscience shocking. *See Dorsey v. Pueblo Sch. Dist. 60*, 140 F. Supp. 3d 1102, 1122 (D. Colo. 2015) ("The Court has serious doubts that Plaintiff could ever state a plausible claim under the danger-creation theory. Plaintiff's allegations revolve around Defendants' inaction in the face of danger."); *see also G.C. ex rel. Counts v. N. Clackamas Sch. Dist.*, 654 F. Supp. 2d 1226, 1248 (D. Or. 2009) (granting summary judgment to the school district for all § 1983 claims wherein an incapacitated minor was sexually assaulted by another developmentally disabled classmate); *Staehling v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:07-0797, 2008 WL 4279839, at *8 (M.D. Tenn. Sept. 12, 2008) (granting summary judgment to the school district under the state-created danger doctrine wherein a special needs student was sexually assaulted on the bus by another special needs student). Accordingly, the Court finds that there are no material facts in dispute, and Defendant is entitled to summary judgment on this claim.

Plaintiffs alleged in the Amended Complaint that the District was liable for failing to adequately train employees. (ECF No. 24, p. 34). First, the undisputed facts show that Defendant does conduct training for Title IX and sexual harassment; Plaintiffs do not contest this. (*See* ECF No. 67, p. 24; ECF No. 75, p. 13). Rather Plaintiffs argue that the training was inadequate "for Staff to understand federal law and JCSD policies." (ECF No. 75, p. 13). Defendant is entitled to summary judgment if Plaintiffs failed to prove "(1) an underlying constitutional violation (2) resulting from a deliberate or conscious choice not to train the employees responsible for the violation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989); *Dobson v. City & Cnty. of Denver*, 81 F. Supp. 2d 1080, 1086 (D. Colo. 1999). Plaintiffs do not argue that Defendant's training or lack thereof creates an underlying constitutional violation. Moreover, Plaintiffs do not allege a constitutional violation separate from their danger-creation claim.[1] (*See* ECF No. 75, p. 16 "This was either a colossal failure to train or an intentional failure to act and made it substantially certain Dylan would remain in a hostile school environment and provided JCSD notice of the need for training."). The Court has found that summary judgment is warranted for Plaintiffs' danger-creation claim, accordingly, it must also find that Plaintiffs' failure-to-train claim also fails because there is no underlying constitutional violation. *Dobson*, 81 F. Supp. 2d at 1086; *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 697 (10th Cir. 1988).

---

[1] Separately, the Court also finds that Plaintiffs did not establish a claim against the District by showing a municipal custom or policy directly resulted in the violation alleged. *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010); *see also Goodwin v. Pennridge Sch. Dist.*, 309 F. Supp. 3d 367, 380 (E.D. Pa. 2018).

### 3. Section 504 and the ADA

#### A. Dylan's Section 504 and ADA Claims

Plaintiffs allege in the Amended Complaint that Defendant discriminated against Dylan in violation of Section 504 and the ADA by ignoring or minimizing K.G.'s harassment due to both individuals' disabilities. (ECF No. 24, pp. 36-39). "Section 504 seeks to assure evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance." *Alexander v. Choate*, 469 U.S. 287, 304 (1985). A claim of discrimination arising under Section 504 and the ADA are analyzed together. *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009). Plaintiffs must establish that (1) Dylan has a disability; (2) he is otherwise qualified to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminated against the plaintiff based upon a disability. *Havens v. Colorado Dep't of Corr.*, 897 F.3d 1250, 1262 (10th Cir. 2018).

Defendant argues that it is entitled to summary judgment because Plaintiffs fail to raise a genuine issue of material fact that it engaged in discrimination or acted with deliberate indifference based on Dylan's disability. (ECF No. 67, pp. 39-40). "[I]ntentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999). Plaintiffs must show (1) that Defendant had knowledge that a harm to a federally protected right was substantially likely, and (2) a failure to act upon that knowledge. *Havens*, 897 F.3d at 1264. "Deliberate indifference requires actual knowledge; allegations that one would have or 'should have known' will not satisfy the knowledge

prong of deliberate indifference." *Id*. at 1267 (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 266 n.26 (3d Cir. 2013)). Defendant argues that "no staff member ever observed K.G. (1) engaging in sexual harassment or unwanted sexual conduct toward any student, including Dylan, or (2) physically harming others, including Dylan." (ECF No. 67, p. 40). The record belies those assertions. Plaintiffs argue that the District turned a blind eye to K.G.'s actions or trivialized her harassment as "love notes" or "angry yelling" due to their disabilities and thus, acted with deliberate indifference. The Court finds that there are material facts in dispute and that a determination about Defendant's intent should be left to the factfinder. Thus, Defendant is not entitled to summary judgment on this claim.

### B. Parents' Section 504 Claims

Finally, Defendant moves for summary judgment on Robert and Julie R.'s claims that their parental rights were violated under Section 504 arguing that they lack standing to bring individual claims. In the Amended Complaint, Plaintiffs allege that while Dylan was out of school for two months, they were required to provide full-time care, their relationship with Dylan has changed since the sexual assault, and that Dylan's emotional and behavioral harm causes them stress, anxiety, and considerable expense. (ECF No. 24, pp. 40-41).

The United States Supreme Court established that, under the Individuals with Disabilities Education Act (IDEA), parents were entitled to prosecute claims on their own behalf because the Act grants parents independent and enforceable rights. *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007). Plaintiffs, citing *A.M. ex rel. J.M. v. NYC Dep't of Educ.*, 840 F. Supp. 2d 660, 675 (E.D.N.Y. 2012), argue that the holding in *Winkelman* should be extended to claims brought by parents or guardians under Section 504. (ECF No. 75, pp. 34-35).

The Tenth Circuit has not directly addressed this issue, but looking at other Circuits' reasoning, this Court concludes that Robert and Julie R. are permitted to assert and enforce Dylan's rights under Section 504 and the ADA and claim damages on his behalf. *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007); *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 161 (5th Cir. 2016) (holding that parents had Article III standing to maintain direct claims for the child's medical expenses under the ADA and Section 504). However, parents are not entitled to assert individual claims for emotional and economic damages under Section 504 because the ADA and Rehabilitation Act never authorized parents and guardians to recover damages for their own emotional distress. *Blanchard*, 509 F.3d at 938 (finding that parent could not recover lost profits resulting from the enforcement of the child's rights under the ADA and Section 504); *Rideau*, 819 F.3d at 169 (holding that the ADA and the Rehabilitation Act did not authorize claims for mental anguish damages based on the mistreatment of the disabled child); *see also A.F. ex rel Christine B. v. Espanola Pub. Sch.*, 801 F.3d 1245, 1249 (10th Cir. 2015) ("[Where] the terms of the statute are clear and unambiguous, the inquiry ends and we simply give effect to the plain language of the statute."). Robert and Julie do have Article III standing to pursue any economic damages that resulted from the treatment and care of Dylan after the sexual assault.

## V.  CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART consistent with the above analysis. (ECF No. 67).

DATED this 8th day of September, 2022.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

14